IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RENAE NAHORY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-932 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 30th day of July, 2013, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 16) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 14) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or

remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her current application[1] for supplemental security income on April 24, 2008, alleging a disability onset date of March 1, 2008, due to bipolar disorder, anxiety and depression. Plaintiff's application was denied initially. At plaintiff's request, an ALJ held a hearing on July 8, 2010, at which plaintiff, represented by counsel, and a vocational expert appeared and testified. On July 28, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On May 8, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 26 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(e). Plaintiff has an eighth-grade education which is classified as limited. 20 C.F.R. §416.963(b)(3). The ALJ found that plaintiff has no past relevant work experience and that she has not engaged in any substantial gainful activity since her alleged onset date.[2]

---

[1] Plaintiff previously had filed two prior applications for supplemental security benefits. The first was denied initially on July 8, 2002, and plaintiff did not request further review. The second was denied by ALJ decision dated February 22, 2007.

[2] The record indicates that plaintiff worked briefly as an assembly line worker and as a youth activities director, but she did not work at any job long enough for it to qualify as substantial gainful activity or past relevant work.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of mild degenerative changes of the lumbar spine; cervical, thoracic and lumbar strain; left hip lipoma; history of scoliosis of the thoracic spine, history of Wilms tumor; status post left nephrectomy; bipolar disorder; panic disorder; and, personality disorder,[3] those impairments, alone or in combination, do not meet or equal the criteria of any impairment listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to engage in light work with certain restrictions recognizing the limiting effects of her impairments.[4] A vocational expert then identified numerous categories of jobs which plaintiff could perform based upon her age, education, work

---

[3] In her current application plaintiff alleged disability solely based on mental impairments. Later, she also asserted disability based on a number of physical impairments. Recognizing that the step 2 inquiry is *de minimus*, the ALJ determined that plaintiff's physical impairments are "severe." The court notes, however, that the record shows that plaintiff never sought medical treatment for any physical impairment.

[4] In addition to a sit/stand option, certain postural limitations and certain environmental restrictions, the ALJ also limited plaintiff to work that entails a low stress work environment with no production line or assembly line type of pace; entails no individual decision making responsibilities; entails routine, repetitive tasks and instructions; entails minimal to no reading ability; and entails no interaction with the general public and no more than occasional interaction with coworkers and supervisors. (R. 13).

experience and residual functional capacity, including home companion(light), garment folder (light) and handpacker (sedentary). Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[5] 20 C.F.R. §416.920; Newell v.

---

[5] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. See also Newell, 347 F.3d at 545-46. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Plaintiff raises two challenges to the ALJ's findings in this case: (1) the ALJ improperly relied on the testimony of the vocational expert who failed to provide the specific numbers in the Dictionary of Occupational Titles ("DOT") of the jobs that he identified as ones that plaintiff retains the residual functional capacity to perform; and, (2) the ALJ improperly considered plaintiff's smoking habit in assessing her credibility. Upon review, the court is satisfied that all of the ALJ's findings are supported by substantial evidence.

At step 5 of the sequential evaluation process, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §416.945(a); Fargnoli, 247 F.3d at 40.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform light work with a number of restrictions meant to accommodate her mental and physical impairments. (R. 13). At the hearing, in response to the ALJ's hypothetical involving an individual of plaintiff's age,

education, work experience and residual functional capacity for light work with the enumerated restrictions, the vocational expert identified home companion and garment folder at the light exertional level, and handpacker at the sedentary exertional level, as representative of the types of jobs that such an individual would be able to perform. The ALJ relied on the vocational expert's testimony in finding plaintiff not disabled at step 5.

Plaintiff does not challenge the ALJ's residual functional capacity finding, nor even argue that she cannot perform the jobs identified by the vocational expert. Rather, plaintiff's sole contention is that the ALJ erroneously relied on the vocational expert's testimony because the vocational expert failed to provide the specific DOT numbers of the jobs that he identified as ones that plaintiff can perform.[6] Plaintiff's argument is without merit.

SSR 00-4p requires an ALJ to identify, and obtain a reasonable explanation for, any conflict between occupational evidence provided by a vocational expert and information contained in the DOT and also to explain in his decision how any conflict that has been identified was resolved. In particular, the Third Circuit Court of Appeals has interpreted SSR 00-4p to require that "the ALJ ask the vocational expert whether any possible conflict

---

[6] At the hearing, plaintiff's counsel asked the vocational expert if he could have the DOT numbers for the identified jobs, to which the vocational expert responded "[n]o sir. I haven't copied them down." (R. 43).

exists between the vocational expert's testimony and the DOT," and, if the testimony does appear to conflict with the DOT, the ruling directs the ALJ "'to elicit a reasonable explanation for the conflict.'" Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir. 2002). "The Ruling requires that the explanation be made on the record and that the ALJ explain in his decision how the conflict was resolved." Id.

Here, a review of the hearing transcript establishes that the ALJ specifically asked the vocational expert if there "is anything in your testimony inconsistent with anything contained in the DOT," to which the vocational expert responded "no sir." (R. 43). In his decision, the ALJ then indicated that "the vocational expert's testimony is consistent with the information contained in the [DOT]." (R. 20). Thus, it is clear from the record that the ALJ fully complied with SSR 04-p.

Although plaintiff argues that the vocational expert was required to provide the specific DOT numbers of the jobs to which he was referring in order for the ALJ to determine whether a conflict existed between the vocational expert's testimony and the DOT, SSR 00-4p does not require that level of specificity. Nor has plaintiff cited any other ruling, regulation or any case law from any jurisdiction mandating that the vocational expert identify the specific DOT number of any job to which he refers. To the contrary, numerous courts expressly have held that a specific DOT number is *not* required. See, e.g., Irelan v. Barnhart, 82 Fed.Appx. 66, 72 (3d Cir. 2003)(no legal basis for

argument that DOT numbers must be available in order for ALJ adequately to test accuracy of vocational expert's testimony); Ryan v. Astrue, 650 F.Supp.2d 207, 218 (N.D.N.Y. 2009)(no error in vocational expert's failure to supply DOT numbers); Burgos v. Astrue, 2010 WL 3829108 at *7 (D.Conn., Sept. 22, 2010)(failure to identify DOT number is not error); Mosteller v. Astrue, 2010 WL 5317335 at * 4 (W.D.N.C., July 26, 2010)(neither SSR 00-4p nor any other relevant authority requires ALJ to inquire as to DOT numbers for jobs referenced by vocational expert).

The court is satisfied in this case that the vocational expert's testimony, even in the absence of specific DOT numbers, constitutes substantial evidence supporting the ALJ's step 5 finding that jobs exist in significant numbers in the national economy that plaintiff can perform. The ALJ met his obligations under SSR 00-4p by expressly inquiring as to whether the vocational expert's testimony was consistent with the DOT, and, in fact there is no conflict.[7] The vocational expert was able to identify a number of light and sedentary jobs existing in significant numbers in the national economy that plaintiff retains the residual functional capacity to perform. Accordingly, the ALJ did not err in relying on the vocational expert's testimony to

---

[7] The court notes that the vocational expert's testimony suggests that he was not unaware of the DOT numbers but that he merely had not written them down for the hearing. (R. 43). Moreover, even a cursory glance at the DOT establishes that the vocational expert's testimony regarding the identified jobs fully is consistent with their descriptions in the DOT as found by the ALJ. See, DOT #789.687-066 (garment folder); DOT #309.677-010 (companion-domestic ser.); and, DOT #529.686-014 (hand packager-cannery worker).

find that plaintiff is not disabled at step 5. See 20 C.F.R. §416.966(a); Plummer, 186 F.3d at 431.

Plaintiff also challenges the ALJ's credibility determination, arguing that the ALJ improperly considered plaintiff's smoking habit in discrediting her testimony. Specifically, plaintiff takes issue with the following statement by the ALJ in his decision:

> Finally, it is noted that [plaintiff] reported during the relevant period of time of smoking one pack of cigarettes per day ... The undersigned notes generally that a cigarette habit presents an ongoing expense that could present some additional incentive to seek disability-related financial benefits in the absence of suitable employment, as well as some disincentive with regard to accepting full-time employment that must be performed within a smoke-free environment. These actions along with what has been previously articulated cast a fog of suspicion over [plaintiff's] subjective allegations, and indicate potential secondary sources of motivation underlying his [sic] efforts to obtain disability benefits.

(R. 15).

While agreeing that such unnecessary speculation would better have been left out of the decision, the court is satisfied that the ALJ's isolated comments regarding plaintiff's smoking habit had no significant bearing on the overall credibility determination, which otherwise is supported by substantial evidence in the record.

It is well-settled that allegations of pain and other subjective symptoms must be supported by objective medical evidence, 20 C.F.R. §416.929(c), and an ALJ may reject a

claimant's subjective testimony if he does not find it credible so long as he explains why he is rejecting the testimony. <u>Schaudeck v. Commissioner of Social Security</u>, 181 F.3d 429, 433 (3d Cir. 1999); <u>see</u> <u>also</u> SSR 96-7p.

Initially, the court does not believe that the plaintiff's smoking habit was a proper consideration in assessing her credibility. Pursuant to the regulations, in evaluating a plaintiff's symptoms, the ALJ is to consider both the objective medical evidence and other evidence to include statements or reports from the claimant, treating or non-treating sources and others "about [the claimant's] medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how [the claimant's] impairment(s) and any related symptoms affect your <u>ability</u> to work." 20 C.F.R. §416.929(a). (emphasis added).

SSR 96-7p advises that the ALJ may consider, in addition to the objective medical evidence, other factors including: the claimant's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of medication; the claimant's treatment history; any additional measures other than treatment the claimant uses to relieve pain or other symptoms; and, "any other factors <u>concerning the [claimant's] functional limitations and restrictions</u> due to pain or other symptoms."

Thus, under the applicable regulations and rulings, it is clear that in assessing credibility the ALJ is to consider factors impacting on the claimant's *ability* to work. Nothing, however, in §416.929(a) or SSR 96-7p authorizes an ALJ to consider the claimant's *motivation* to work or *incentive* not to work. Here, however, the ALJ's discussion of plaintiff's smoking habit had nothing to do with how it impacted on plaintiff's ability to work but solely speculated that it constituted an expense that provides an incentive for plaintiff to seek financial benefits and a "disincentive" for her to seek work at a smoke-free workplace. Because the ALJ did not find that plaintiff's smoking habit in any way affected her ability to work, it was not a proper consideration in assessing her credibility.

Nevertheless, the court is satisfied that the ALJ's unnecessary speculation regarding plaintiff's smoking habit did not impact his ultimate credibility determination, which otherwise is sound and supported by the evidence. In assessing credibility, the ALJ also considered plaintiff's subjective complaints in light of the objective medical evidence, plaintiff's rather extensive activities of daily living, her limited treatment history, her improvement while on medication, and all of the other relevant evidence of record. (R. 14-15). In doing so, the ALJ found that plaintiff "overstated the severity of her condition" and concluded that plaintiff "does experience symptoms related to [her] impairments, but not to the frequency or debilitating degree of severity alleged." (R. 15). The ALJ thoroughly explained his

credibility finding and that finding is more than supported by substantial evidence, as outlined in detail in the decision, notwithstanding the ALJ's isolated comments regarding plaintiff's smoking habit.

It also is important to note that while the ALJ did not find plaintiff's subjective complaints <u>entirely</u> credible, his decision makes clear that, to the extent plaintiff's allegations as to the limitations arising from her impairments are supported by the medical and other evidence, the ALJ did accommodate those limitations in his residual functional capacity finding. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible. Moreover, it is not this court's function to re-weigh the evidence and arrive at its own credibility finding, but only to determine whether the ALJ's credibility determination is supported by substantial evidence. The court is satisfied that it is despite the ALJ's ill-advised statements regarding plaintiff's smoking habit.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Michael V. Quatrini, Esq.
    Quatrini Rafferty, P.C.
    550 East Pittsburgh Street
    Greensburg, PA 15601

    Michael Colville
    Assistant U.S. Attorney
    U.S. Post Office & Courthouse
    700 Grant Street, Suite 4000
    Pittsburgh, PA 15219